IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |
|---|---|
| In re:<br><br>**THE COLONIAL BANCGROUP, INC.**<br><br>Debtor. | Case Number 09-32303<br>Chapter 11 |
| **THE COLONIAL BANCGROUP, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**BRANCH BANKING AND TRUST COMPANY**<br><br>Defendant. | Adv. Proc. No. 11-03022<br><br>Adv. Proc. No. 11-03026<br><br>**RELIEF SOUGHT FROM A**<br>**U.S. DISTRICT COURT JUDGE** |

**BRANCH BANKING AND TRUST COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO WITHDRAW THE REFERENCE</u>**

Branch Banking and Trust Company ("BB&T"), respectfully submits this memorandum of law in support of its motion pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure to withdraw the reference to the United States Bankruptcy Court for the Middle District of Alabama (the "<u>Bankruptcy Court</u>").

**<u>INTRODUCTION</u>**

This Motion to Withdraw the Reference is filed in the two above-styled adversary proceedings recently brought by the debtor, The Colonial BancGroup, Inc. (the "<u>Debtor</u>"), against BB&T in the Bankruptcy Court (the "<u>Adversary Proceedings</u>"). The Adversary

Proceedings are indisputably linked with controversies that are already pending before this Court in two civil actions between the Debtor and the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver").  *See* Civil Action Nos. 2:10-cv-00198 and 2:10-cv-00409 (the "District Court Actions").

In the District Court Actions, the Debtor, as the bankruptcy parent of Colonial Bank, is attempting to recover receivership assets from the FDIC-Receiver, among other claims. However, certain of the receivership assets that are the subject of Debtor's recovery claims in the District Court Actions are now owned by BB&T, who purchased these assets from the FDIC-Receiver.  Approximately one year after filing the District Court Actions against the FDIC-Receiver, the Debtor commenced the Adversary Proceedings against BB&T asserting virtually identical claims as those asserted against the FDIC-Receiver in the District Action Actions and involving the same assets that are the subject of the District Court Actions.

Withdrawal of the reference of the Adversary Proceedings is mandatory under 28 U.S.C. § 157(d) because resolution of the Adversary Proceedings will require substantial and material consideration of federal laws other than the Bankruptcy Code — namely, the Federal Deposit Insurance Act ("FDIA") and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").  *See* 12 U.S.C. §§ 1821, 1828.  Moreover, withdrawal of the reference is required because the District Court, not the Bankruptcy Court, has the statutory authority to preside over all issues presented in both the Adversary Proceedings and the District Court Proceedings. *See* 12 U.S.C. § 1821(d)(6)(A) (limiting jurisdiction over suits seeking judicial determination of disallowed receivership claims to one of two specific federal district courts); 12 U.S.C. § 1821(d)(13)(D) (except as provided under section 1821(d)(6)(A), "no court shall have

jurisdiction" over claims or actions relating to the assets of failed bank or the actions of the FDIC as its receiver).

Aside from being mandatory, withdrawal of the reference is also proper under 28 U.S.C. § 157(d) for good cause. It will avoid the risk of inconsistent adjudications and inefficiencies that would necessarily result from simultaneous litigation of identical controversies in this Court and the Bankruptcy Court. If the reference is not withdrawn, this Court's rulings in the District Court Action would have a material impact on the Adversary Proceedings, and the Bankruptcy Court's rulings in the Adversary Proceedings would have a material impact on the District Court Actions. The possibility of inconsistent rulings should be avoided. BB&T is not seeking consolidation of the Adversary Proceedings with the District Court Actions at this time, although it is willing to explore this possibility with the Court and the parties. At this juncture, BB&T simply seeks to have <u>all</u> of the parties' litigation involving the same claims and same property before a <u>single</u> court with jurisdiction to preside over <u>all</u> issues.

## BACKGROUND

### A. <u>The Colonial Bank Receivership and the Debtor's Bankruptcy Case</u>

The Debtor was a bank holding company whose main asset was its wholly-owned subsidiary, Colonial Bank. On August 14, 2009 (the "<u>Receivership Date</u>"), Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as receiver for Colonial Bank. On the Receivership Date, the FDIC-Receiver sold and assigned substantially all of Colonial Bank's assets to BB&T, and BB&T assumed certain identified liabilities of Colonial Bank, pursuant to a Purchase and Assumption Agreement dated August 14, 2009 (the "<u>P&A Agreement</u>"). *See* Ex. 1 at ¶¶ 10-11.

On August 25, 2009, eleven days after the Receivership Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *Id.* at ¶ 12. A Chapter 11

3

plan of liquidation was ultimately confirmed by the Bankruptcy Court in the Debtor's bankruptcy case on June 2, 2011.  *See* Ex. 2.  Pursuant to the Debtor's confirmed plan, the liquidation of the Debtor's assets (consisting primarily of lawsuits against third parties) is now being managed and directed by a Plan Trustee.

### B. The District Court Actions

In March of 2010, the Debtor commenced several proceedings against the FDIC-Receiver in the Bankruptcy Court relating to ownership of receivership assets, as well as a civil action against the FDIC-Receiver in the District Court appealing the FDIC-Receiver's denial of the Debtor's proof of claim in the Colonial Bank receivership.  The FDIC-Receiver filed a motion to withdraw the reference with respect to the Debtor's proceedings filed against it in the Bankruptcy Court, and on May 10, 2010, the District Court entered an Opinion and Order (based upon the parties' consent) granting the FDIC-Receiver's motion.  *See* Ex. 3.  Both the originally filed civil action in the District Court, and the proceedings withdrawn from the Bankruptcy Court are now administratively consolidated and proceeding in the District Court under Civil Action Nos. 2:10-cv-00198 and 2:10-cv-00409 (as defined above in the Introduction, the "District Court Actions").  *See id.*

The Debtor asserts in the District Court Actions, among other claims, that its pre-receivership transfers of certain assets to Colonial Bank were not effective or, if they were, should be disregarded as purported fraudulent transfers or preferential transfers.  *See* Ex. 1 at ¶¶ 44-56, 64-74.  Some of the receivership assets made the subject of the District Court Actions were assigned to BB&T pursuant to the P&A Agreement.  Specifically, the District Court Actions involve the following receivership assets that are owned by BB&T pursuant to the P&A Agreement: (i) 300,000 shares of REIT Preferred Securities with a liquidation preference of $300

million (the "REIT Securities"), and (ii) a security interest in the proceeds of the Debtor's deposit accounts at Colonial Bank (the "Deposit Accounts").[1] *Id.*

The Debtor did not name BB&T as a party in the District Court Actions even though the Debtor knew that BB&T claims ownership of the REIT Securities and the Deposit Accounts by virtue of the P&A Agreement. On August 15, 2011, the Debtor filed motions for summary judgment[2] in the District Court Actions which unmistakably implicate BB&T's rights in the REIT Securities. *See* Ex. 4 at 26 (requesting a summary judgment that the REIT Securities "comprise property of [Debtor's] estate"). The FDIC-Receiver also filed a motion for summary judgment in the District Court Actions on August 15, 2011.

### C. The BB&T Adversary Proceedings

In April 2011, approximately one year after filing the District Court Actions, the Debtor filed two Adversary Proceedings against BB&T in the Bankruptcy Court purportedly seeking to recover the REIT Securities and the Deposit Accounts from BB&T. Specifically, in Adversary Proceeding No. 11-03026, styled *The Colonial BancGroup, Inc. v. BB&T* and filed on April 8, 2011, the Debtor seeks to recover the REIT Securities from BB&T on grounds that the transfer of the REIT Securities from the Debtor to Colonial Bank never occurred (Count I) or, if it did, the transfer should be disregarded as a purported preferential or fraudulent transfer (Counts II & III) (the "REIT Securities Adversary Proceeding"). *See* Ex. 5 at ¶¶ 27-51. In Adversary Proceeding No. 11-03022, styled *The Colonial BancGroup, Inc. v. BB&T* and filed on April 5,

---

[1] Prior to filing bankruptcy, the Debtor pledged the proceeds in the Deposit Accounts to Colonial Bank as collateral for certain loans made by Colonial Bank to other subsidiaries of the Debtor (the "Affiliate Loans"). BB&T is now the holder of the Affiliate Loans and the Deposit Accounts pursuant to the P&A Agreement.

[2] Debtor filed what appear to be identical motions for summary judgment and briefs in the District Court Actions. *See* Docs. 70 and 71 in Case No. 2:10-cv-00409, and Docs. 116 and 117 in Case No. 2:10-cv-00198.

2011, the Debtor seeks, among other things, to recover the Deposit Accounts from BB&T as a purported preferential or fraudulent transfer (Counts IV, V, and VI) (the "Deposit Account Adversary Proceeding"). *See* Ex. 6 at ¶¶ 102-125.

The Adversary Proceedings between the Debtor and BB&T, and the District Court Actions between the Debtor and the FDIC-Receiver, present the following common issues:

(1) Whether the Debtor's August 11, 2009, transfer of the REIT Securities to Colonial Bank actually occurred? *Compare* Ex. 4 at 18-23 *to* Ex. 5 at ¶¶ 27-36 (i.e., Count I).

(2) Whether the Debtor's August 11, 2009, transfer of the REIT Securities to Colonial Bank is avoidable as a preferential and/or fraudulent transfer? *Compare* Ex. 1 at ¶ 51 *to* Ex. 5 at ¶¶ 37-51 (i.e., Counts II and III).

(3) Whether the Debtor's January 2009 transfer of a security interest in the Deposit Accounts is avoidable as a preferential transfer and/or fraudulent transfer? *Compare* Ex. 1 at ¶¶ 52-56, 64-74 *to* Ex. 6 at ¶ ¶ 102-125.

Based on its recent summary judgment filings in the District Court Actions, it appears that the Debtor is attempting to effectively obtain a judgment for possession of the REIT Securities and the Deposit Accounts in the District Court Actions to use offensively against non-party BB&T in the Adversary Proceedings. Although the Adversary Proceedings were only recently filed, BB&T intends to shortly file its own motion for summary judgment, which will assert many arguments identical to those asserted in the FDIC-Receiver's pending motion for summary judgment in the District Court Actions. BB&T believes that, in the interest of justice, the District Court should consider BB&T's motion for summary judgment simultaneously with the parties' motions for summary judgment in the District Court Actions because many of the issues addressed and arguments asserted by BB&T will be identical to those raised by the FDIC-Receiver in its motion for summary judgment.

### D. Global Settlement Conference

Due to the obvious overlap of claims in the Adversary Proceedings and the District Court Actions, BB&T was recently invited by the FDIC-Receiver and the Debtor to attend a Court-ordered settlement conference in the District Court Actions that occurred in Washington D.C. on August 30, 2011. The purpose of the settlement conference was to explore whether a global settlement of the District Court Actions and the Adversary Proceedings could be achieved. The settlement conference was not successful.

### E. BB&T's Third-Party Complaint for Indemnity Against the FDIC

BB&T believes that the FDIC-Receiver is obligated to indemnify BB&T in the Adversary Proceedings pursuant to the indemnity provisions contained in the P&A Agreement. Shortly after the Debtor filed the Adversary Proceedings, BB&T formally requested indemnification from the FDIC. However, the FDIC-Receiver denied BB&T's claim for indemnity by letter dated July 18, 2011.

BB&T believes that the Debtor's claims in the Adversary Proceedings have no merit but, in order to protect its interests, BB&T filed a Third-Party Complaint against the FDIC-Receiver on September 16, 2011, seeking indemnification and other relief from the FDIC under the P&A Agreement. *See* Ex. 7.

### F. BB&T's Motion to Withdraw the Reference

The respective rights and claims of the Debtor, the FDIC-Receiver and BB&T vis-à-vis the REIT Securities and the Deposit Accounts are presently divided among the various actions pending in the District Court and the Bankruptcy Court. To eliminate the risk of inconsistent adjudications and prejudice to BB&T, and to avoid duplication and waste, this Motion to Withdraw the Reference seeks to place all three interested parties and all relevant issues before

the District Court.  Moreover, the District Court—unlike the Bankruptcy Court—has the statutory authority to preside over all issues presented in the Adversary Proceedings.

## ARGUMENT

This Court should withdraw the reference to the Bankruptcy Court with respect to the Adversary Proceedings against BB&T.  Withdrawal of the reference of matters pending before the bankruptcy courts is governed by 28 U.S.C. § 157(d), which provides that:

> The district court *may* withdraw, in whole, or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  Courts recognize that Section 157(d) authorizes two types of withdrawals.  "The first sentence of the statute authorizes permissive withdrawal, and the second sentence provides for mandatory withdrawal."  *Lubin v. Cincinnati Ins. Co.*, 411 B.R. 801, 803 (N.D. Ga. 2009) (withdrawing reference of declaratory judgment action in which the court likely would be required to give "substantial and material consideration" of FIRREA).

Here, the reference should be withdrawn under both parts of the statute.  The Adversary Proceedings will require substantial and material consideration of federal law other than the Bankruptcy Code (namely Title 12), and therefore withdrawal of the reference is mandatory.  Moreover, the District Court (and not the Bankruptcy Court) has the statutory authority to preside over all issues presented in the both the Adversary Proceedings and the District Court Proceedings.  In addition, withdrawal of the reference is otherwise proper for good cause because it will avoid duplication and waste, as well as the risk of inconsistent adjudications, by allowing the District Court to resolve the overlapping claims and issues presented in the District Court Actions and the Adversary Proceedings.

I.  **WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE RESOLUTION OF THE ADVERSARY PROCEEDINGS WILL REQUIRE SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL LAWS OTHER THAN TITLE 11.**

Withdrawal of the reference of the Adversary Proceedings is mandatory under 28 U.S.C. § 157(d) because BB&T's defenses in this case will require substantial and material consideration of Title 12 of the United States Code. In the Eleventh Circuit, withdrawal of the reference under Section 157(d) is mandatory where resolution of the claims will require "substantial and material consideration" of non-bankruptcy code statutes. *Safety Guide of Ala., LLC v. McKnight Constr. Co. (In re Safety Guide of Alabama, LLC)*, No. 2:08-mc-03415, 2009 WL 4456338, *2 (M.D. Ala. Nov. 24, 2009) (citations omitted); *see also Childs v. Gallagher (In re Childs)*, 342 B.R. 823, 826-27 (M.D. Ala. 2006) (quotations omitted); *DePaolo v. Price (In re Price)*, No. 2:06mc3317-MHT, 2007 WL 2332536, at *2 (M.D. Ala. Aug. 13, 2007).

Because the Adversary Proceedings will require substantial and material consideration of both the FDIA and FIRREA under Title 12 of the United States Code, withdrawal of the reference is required. In fact, the Debtor has previously acknowledged that these matters should be considered by the District Court rather than the Bankruptcy Court when the Debtor consented to the Opinion and Order for withdrawal of the reference in District Court Action, 2:10-cv-00409. *See* Ex. 3. As set forth below, BB&T has asserted numerous, dispositive defenses in its Answer under the provisions of the FDIA and FIRREA. *See* Exs. 8 and 9 at Affirmative Defenses Nos. 19, 20, and 21.

First, substantial and material consideration of 12 U.S.C. § 1821(d) is required in the Adversary Proceedings because the Debtor's claims seek a determination of rights with respect to the assets and actions of a failed bank as well as the FDIC-Receiver. As BB&T will explain in detail in its soon-to-be-filed motion for summary judgment, BB&T asserts that the Debtor's

9

claims against BB&T in the Adversary Proceedings are barred by Section 1821(d)(13)(D). FIRREA's mandatory administrative process for handling claims relating to the assets of a failed bank is set forth in 12 U.S.C. § 1821(d)(3) through (13). *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). This claims process is the ***exclusive*** remedy for all claims enumerated in section 1821(d)(13)(D). To ensure compliance with FIRREA's exclusive process, Congress enacted 11 U.S.C. § 1821(d)(13)(D), which provides:

> (D)  Limitation on judicial review.
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i)  any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)  any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D); *see also Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995).

The Debtor's claims in the Adversary Proceedings are subject to FIRREA because these claims relate to both: (1) "the assets of [a] depository institution for which the Corporation has been appointed receiver;" *see* 12 U.S.C. § 1821(d)(13)(D)(i); and (2) "acts or omissions of such [depository institution] or the FDIC as receiver;" s*ee* 12 U.S.C. § 1821(d)(13)(D)(ii). Although the REIT Securities and Deposit Accounts have been sold to BB&T by the FDIC-Receiver pursuant to the P&A Agreement, FIRREA applies "even if the assets are no longer in possession of the FDIC." *Benson v. JPMorgan Chase Bank, N.A.*, Nos. 09-5272 and 09-5560, 2010 WL 3168390, at *6 (N.D. Cal. Aug. 10, 2010); *see also Lutz v. Stewart Michigan Title*, 2011 WL 833798, at *6 (E.D. Mich. March 4, 2011) (holding that the note and mortgage which the assuming bank had purchased, and upon which the assuming bank was being sued, was an "asset

10

of [a] depository institution for which the Corporation has been appointed receiver" and thus was subject to FIRREA).   Moreover, the plain language of Section 1821(d)(13)(D) applies "even if the FDIC and the failed bank are not named as defendants."  *Benson*, 2010 WL 3168390, at *6.

An analysis of FIRREA's jurisdictional bar will be required in connection with the Adversary Proceedings and BB&T's motion for summary judgment. This is an analysis that the District Court, and not the Bankruptcy Court, can undertake because only the District Court is vested with statutory authority over such matters.  *See* 12 U.S.C. § 1821(d)(6)(A).  Accordingly, withdrawal of the reference of the Adversary Proceedings is mandatory because substantial and material consideration of Section 1821(d) is required.

Second, substantial and material consideration of 12 U.S.C. § 1821(j) is required because the Debtor's claims against BB&T in the Adversary Proceedings essentially seek to rescind the FDIC-Receivers' sale of certain receivership assets to BB&T.  Thus, as BB&T will explain in detail in its soon-to-be-filed motion for summary judgment, BB&T asserts that the Debtor's claims are barred by 12 U.S.C. § 1821(j)'s prohibition that:

> Except as provided in this section, ***no court may take any action***, except at the request of the Board of Directors by regulation or order, ***to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver***.

12 U.S.C. § 1821(j) (emphasis added).

Federal courts have interpreted 12 U.S.C. § 1821(j) broadly and held that no court has the power to rescind an asset transfer made by the FDIC pursuant to its powers under Section 1821(d)(2), because that would constitute an improper judicial restraint on the FDIC in violation of Section 1821(j).  *See e.g.*, *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1059 (9th Cir. 1996); *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 104 (5th Cir. 1993); *United Liberty Life*

*Ins. Co. v. Ryan*, 985 F.2d 1320, 1328-29 (6th Cir. 1993); *Darden v. Resolution Trust Corp.*, CIV. A. 393CV13, 1995 WL 1945486, at * 3 (N.D. Miss. June 25, 1995).

Section 1821(j)'s prohibition may not be avoided by filing suit solely against a third-party assuming bank, such as BB&T. *Pyramid Constr. Co., Inc. v. Wind River Petroleum*, Inc., 866 F. Supp. 513, 518 (D. Utah 1994). As noted by the Court in *Pyramid Construction*, the broad and all-encompassing language of Section 1821(j) evidences Congress's intent to prohibit any judicial interference, "either directly or indirectly," with the FDIC's powers as receiver, including its powers to dispose of a failed bank's assets. *Id.* Accordingly, withdrawal of the reference of the Adversary Proceedings is mandatory because substantial and material consideration of Section 1821(j) will be required.

Third, substantial and material consideration of 12 U.S.C. § 1828(u) is required because claims in the Adversary Proceedings seek to avoid transfers of assets by the Debtor (i.e. a bank holding company) to Colonial Bank (i.e. a subsidiary bank) that occurred at a time when Colonial Bank was subject to express written directives by the FDIC to increase its capital.[3] These directives were made by the FDIC pursuant to its regulatory powers to direct "prompt corrective action" as set forth in the FDIA. In fact, the Debtor has admitted in the District Court Actions that the Cease and Desist Order constituted a "directive" as contemplated by § 1828(u)(1). *See* Ex. 12 at 21 ("BancGroup concedes that the Bank C&D constitutes a 'directive'

---

[3] Specifically, the Debtor seeks in the Deposit Account Adversary Proceeding to avoid as a preferential or fraudulent transfer its conveyance of a security interest in the Deposit Accounts to Colonial Bank while it was subject to a December 15, 2008, Memorandum of Understanding ("MOU") with the FDIC that required the capital of Colonial Bank to be increased. *See* Ex. 10 at ¶ 14; *see also* Ex. 6 at p. 29, ¶¶ d-f. In the REIT Securities Adversary Proceeding, the Debtor seeks to avoid as a preferential or fraudulent transfer its contribution of the REIT Securities to Colonial Bank while it was subject to a June 15, 2009 Cease and Desist Order ("C&D") issued by the FDIC that required the capital of Colonial Bank to be increased. *See* Ex. 11 at ¶ 3(a); *see also* Ex. 5 at ¶¶ 44-51.

with the meaning of Section 1828(u)").

Section 1828(u) of the FDIA precludes a bank holding company, like the Debtor, from bringing a "claim against a Federal banking agency (including in its capacity as conservator or receiver)" to recover a transfer of assets to its subsidiary bank, if at the time of the transfer, the bank was "subject to any direction issued in writing by a Federal banking agency to increase its capital."  12 U.S.C. § 1828(u)(1).  The FDIC-Receiver has raised this argument in its pending motion for summary judgment in the District Court Actions (*see* Ex. 13 at 59-60), and BB&T will raise this argument in its soon-to-be-filed motion for summary judgment.  This statutory prohibition applies to protect assuming banks, like BB&T, that acquire receivership assets of failed banks and who stand in the shoes of the FDIC-Receiver. *See e.g.*, *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263, n. 3 (11th Cir. 1999) ("[Assuming Bank], having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA.").[4]  Accordingly, withdrawal of the reference of the Adversary Proceedings is mandatory because substantial and material consideration of 12 U.S.C. § 1828(u) will be required.

Fourth, substantial and material consideration of 12 U.S.C. § 1819 may be required because BB&T's Third Party Complaint asserts claims against the FDIC in its corporate capacity.  *See* Ex. 7.  BB&T's Third Party Complaint against the FDIC, <u>both</u> in its capacity as

---

[4] Alternatively, BB&T will also assert that 12 U.S.C. § 1828(u) precludes the Debtor as a matter of law from meeting its burden of proof on its claims for fraudulent or preferential transfer.  *See IBT Int'l, Inc. v. Northern (In re Int'l Admin. Serv., Inc.)*, 408 F.3d 689, 706 (11th Cir. 2005) (holding that under 11 U.S.C. § 550, a bankruptcy trustee cannot recover an asset from a subsequent transferee unless and until he successfully demonstrates that the debtor's initial transfer was avoidable as a fraudulent or preferential transfer in the first instance.)  Because Section 1828(u) precludes the Debtor as a matter of law from successfully avoiding the Debtor's transfers to Colonial Bank, Debtor cannot recover from BB&T as the purported subsequent transferee of an avoidable transfer.  *Id.*

the receiver for Colonial Bank and in its corporate capacity, seeks indemnity and other legal and equitable relief in connection with the REIT Securities Adversary Proceedings pursuant to the provisions of the P&A Agreement. BB&T anticipates that the FDIC may contend that the Bankruptcy Court lacks subject matter jurisdiction over the Third Party Complaint based on Section 1819(b)(2), which provides, in relevant part, that "suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States," and "the Corporation may … remove any action, suit or proceeding from a State court to the appropriate United States district court."  11 U.S.C. § 1819(b)(2)(A) & (B).  At a minimum, however, BB&T's Third Party Complaint against the FDIC in its corporate capacity is clearly governed by "other laws of the United States," as referred to in 28 U.S.C. § 157(d).  Accordingly, substantial and material consideration of these other federal laws may be required with respect to BB&T's Third Party Complaint.

## II. WITHDRAWAL OF THE REFERENCE SHOULD BE GRANTED FOR GOOD CAUSE BECAUSE ALL RELATED DISPUTES SHOULD BE BEFORE THIS COURT.

Apart from the grounds for mandatory withdrawal of the reference set forth above in Section I, this Motion should be granted because good cause exists to withdraw the reference. All related disputes should be addressed in a single court, (i.e., this Court), where the Debtor's identical actions against the FDIC-Receiver under FIRREA already are already pending.  The Debtor should not be allowed to potentially prejudice the rights of non-party BB&T by splitting its claims between this Court and the Bankruptcy Court.

"The decision of whether to grant a motion for permissive withdrawal is within the sound discretion of the district court.  In order to establish that permissive withdrawal is appropriate, the moving party must demonstrate that sufficient 'cause' exists for withdrawal."  *Lubin*, 411 B.R. at 804 (quoting *TPI Int'l Airways, Inc. v. F.A.A. (In re TPI Int'l Airways, Inc.)*, 222

14

B.R. 663, 668 (S.D. Ga. 1998)).  Factors courts consider in evaluating whether sufficient "cause" has been shown include "decreasing forum shopping and confusion," "promoting the economical use of parties' resources," and ensuring the "efficient use of judicial resources."  *Lubin,* 411 B.R. at 804 (quoting *Parklane Hosiery Co., Inc. v. Parklane/Atlanta Venture (In re Parklane/Atlanta Joint Venture)*, 927 F.2d 532, 536 n.5 (11th Cir. 1991) and *In re TPI Int'l Airways, Inc.*, 222 B.R. at 668).  Courts also consider whether the action to be withdrawn includes "core" or "non-core" matters.  *Id.*[5]

Given these factors, district courts routinely withdraw the reference of adversary proceedings when related actions are pending in district court.  *See, e.g., Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 690 (1st Cir. 1994) (supporting withdrawal of the reference because "it makes no sense for the two actions to proceed along separate tracks"); *Holmes v. Grubman*, 315 F. Supp. 2d 1376, 1381 (M.D. Ga. 2004) (granting conditional withdrawal to permit adversary proceeding to be consolidated with related consolidated securities litigation pending in another district); *Breeden v. Sphere Drake Ins. PLC (In re Bennett Funding Group, Inc.)*, 258 B.R. 67, 77 (Bankr. N.D.N.Y. 2000) ("With respect to the efficient use of judicial resources, it appears highly inefficient to force the defendants to litigate many of the same issues in two separate forums"); *Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 43-44 (S.D.N.Y. 1993) (withdrawing reference of adversary proceeding where two related actions were pending in district court); *In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D. Ill. 1992) ("[Plaintiff] is in a situation in which it is involved in two proceedings in bankruptcy and non-

---

[5] BB&T's Third Party Complaint against the FDIC-Receiver in the REIT Securities Adversary Proceeding is a "non-core" proceeding.  As discussed in Section I above, BB&T's Third Party Complaint is governed by federal law and, further, BB&T reasonably anticipates that the FDIC will contend that the Bankruptcy Court lacks jurisdiction over the Third Party Complaint and that it must be litigated in this District Court.

bankruptcy forums, litigating essentially the same core of transactional facts, with different parties. Research indicates that when this situation arises, it has generally been found to constitute cause for discretionary withdrawal.") (collecting cases); *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239-40 (S.D.N.Y. 1987) (withdrawing reference of fraudulent transfer action to be consolidated with related case pending in district court).

Here, a comparison of the Debtor's filings establishes that its Adversary Proceedings against BB&T are not only substantially related to, but in fact are essentially the same as, the disputes raised in the Debtor's District Court Actions against the FDIC-Receiver. Moreover, in addition to the fact that the District Court, and not the Bankruptcy Court, has the requisite statutory authority to preside over all of the claims raised in both the Adversary Proceedings and the District Court Actions, the District Court is also the court through which the Bankruptcy Court derives its own jurisdiction in the Debtor's chapter 11 case. *See Parklane Hosiery Co., Inc.*, 927 F.2d at 535 ("In his rush to establish his right of access to the bankruptcy court, [the plaintiff] ignores the fact that Congress has placed original jurisdiction over bankruptcy cases and proceedings in the district courts.") (citing 28 U.S.C. § 1334). Therefore, withdrawal of the reference is the only avenue for bringing the various disputes into a single forum for efficient litigation and adjudication. Clearly, there is good cause for withdrawal of the Adversary Proceedings to prevent injustice, promote economy and savings, and avoid the possibility of inconsistent adjudications.

### III. BB&T'S MOTION TO WITHDRAW THE REFERENCE IS TIMELY.

BB&T's Motion to Withdraw the Reference is timely. "[C]ourts are in general agreement that a motion is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceedings, or, more simply, if it was made at the first reasonable opportunity." *In re Childs*, 342 B.R. at 828 (quotations omitted); *In re Price*, 2007 WL 2332536, at *3. Here,

BB&T's has filed this Motion as promptly as possible in the light of the developments in the bankruptcy proceedings, and this Motion is timely brought.  *See e.g., VWE Group, Inc. v. Amlicke (In re VWE Group, Inc.)*, 359 B.R. 441, 447 (S.D.N.Y. 2007) (holding that defendants' motion to withdraw the reference was timely when filed over four and a half months after complaint was filed); *Shubert v. Julius Kraft Co., Inc. (In re Winstar Communications, Inc.)*, 321 B.R. 761, 763-64 (D. Del. 2005) (holding that transferee's motion to withdraw the reference was timely when filed nine months after complaint was filed and within two months of trial); *Interconnect Tel. Services, Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986) (holding that motion to withdraw the reference was timely when filed one year after complaint was filed); *Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 730-31 (D. Kan. 1986) (holding that chapter 11 debtors' motion to withdraw the reference was timely when filed ten months after counterclaims were filed by debtors).

The Adversary Proceedings were filed on April 5 and 8, 2011.  Because the parties were actively involved in litigating plan confirmation and a motion to convert the Debtor's Chapter 11 case to a Chapter 7 case, an Agreed Order was entered granting BB&T until June 10, 2011, to file answers or responsive pleadings.  *See* Ex. 14.  The parties spent the months of April and May, 2011 litigating plan confirmation and whether the Debtor's case should be converted from Chapter 11 to Chapter 7.  These matters were resolved on June 2, 2011, when the Bankruptcy Court confirmed a modified Chapter 11 plan.  *See* Ex. 2.  These proceedings in the Debtor's Bankruptcy Case could have impacted the Adversary Proceedings but ultimately did not.

After the Adversary Proceedings were filed, BB&T promptly notified the FDIC of its indemnification rights with respect to the Adversary Proceedings under the P&A Agreement and tendered the Adversary Proceedings to the FDIC for defense.  After receiving no response,

BB&T wrote the FDIC again on June 3 and July 6 inquiring when a response would be forthcoming. The FDIC ultimately denied BB&T's indemnity requests on July 18, 2011, and refused to assume the defense of the Adversary Proceedings. *See* Ex. 7.

Shortly after the FDIC-Receiver denied BB&T's indemnity requests, BB&T was invited by the parties to the District Court Actions to attend a global settlement conference in Washington D.C. on August 30, 2011, to discuss a potential settlement of the District Court Actions and the Adversary Proceedings. The settlement conference did not yield a settlement.

In summary, BB&T's Motion to Withdraw the Reference was prompted by a confluence of recent developments, including:

1. The FDIC's denial of indemnification and refusal to assume BB&T's defense dated July 18, 2011;

2. The arguments raised by the Debtor in its motions for summary judgment filed in the District Court Actions on August 16, 2011, which purport to prejudice non-party BB&T's rights;

3. The parties' inability to achieve a global resolution at the settlement conference on August 30, 2011; and

4. The filing of BB&T's Third-Party Complaint against the FDIC on September 16, 2011.

There has been no material activity in the Adversary Proceedings prior to the filing of BB&T's Motion to Withdraw the Reference, and no delay, waste or prejudice to either party will result from the withdrawal of the reference. No discovery requests have been served by either party and no depositions have been noticed in the Adversary Proceedings. A Scheduling Order was only recently entered by the Bankruptcy Court on August 2, 2011, and the Adversary Proceedings are not set for trial until July 16, 2012. *See* Ex. 15. Accordingly, BB&T's motion is timely and should be granted.

## CONCLUSION

For the foregoing reasons, BB&T respectfully requests that this Court withdraw the reference to the Bankruptcy Court with respect to the Adversary Proceedings styled *Colonial BancGroup, Inc. v. BB&T*, Adv. Proc. No. 11-03022, and *Colonial BancGroup, Inc. v. BB&T*, Adv. Proc. No. 11-03026, and that the Court grant BB&T such other and further relief as it may deem just and proper.

        Respectfully submitted,

        _s/ Phil Butler_
        Phil Butler
        Bradley Arant Boult Cummings, LLP
        401 Adams Avenue, Suite 780
        Montgomery, AL 36104
        (334) 956-7700

        -and-

        N. Christian Glenos
        Ethan T. Tidmore
        T. Parker Griffin. Jr.
        Bradley Arant Boult Cummings, LLP
        1819 Fifth Avenue North
        Birmingham, AL 35203
        (205) 521-8721

        *Attorneys for Branch Banking and Trust Company*

**CERTIFICATE OF SERVICE**

    I do hereby certify that I have on this 20th day of September, 2011, served a copy of the foregoing pleading be electronic filing and by placing the same in the United States first class mail, properly addressed and postage prepaid, as follows:

    Gus H. Small
    Brent W. Herrin
    Cohen Pollock Merlin & Small
    3350 Riverwood Parkway
    Suite 1600
    Atlanta, Georgia 30339

    Benjamin Finestone
    Quinn Emanuel
    51 Madison Avenue, 22nd Floor
    New York, New York 10010

    Andrew P. Campbell
    Leiman, Siegal, Payne & Campbell, PC
    420 N. 20th Street, Suite 2000
    Birmingham, AL 35203

    C. Edward Dobbs
    Rufus T. Dorsey, IV
    Parker Hudson Rainer & Dobbs, LLP
    1500 Marquis Two Tower
    285 Peachtree Center Avenue NE
    Atlanta, GA 30303

    Michael Fritz, Sr.
    Fritz, Hughes & Hill LLC
    1784 Taliaferro Trail, Suite A
    Montgomery, AL 36117

    John J. Clarke, Jr.
    Thomas R. Califano
    Michael D. Hynes
    Spencer Stiefel
    DLA Piper LLP
    1251 Avenue of the Americas
    New York, New York 10020-1104

    s/ Phil Butler
    OF COUNSEL