**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>    **Debtor.** | **BANKRUPTCY CASE NO.**<br>**09-32303-DHW** |
| **THE COLONIAL BANCGROUP, INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BRANCH BANKING AND TRUST COMPANY,**<br><br>    **Defendant.** | **DISTRICT COURT MISC. NO.**<br>**2:11-mc-3579-MHT**<br><br>**(Bankr. Adv. Proc. No. 11-03022)** |

**BRIEF OF THE COLONIAL BANCGROUP, INC. IN OPPOSITION TO
THE MOTION OF BRANCH BANKING AND TRUST COMPANY TO
WITHDRAW REFERENCE OF ADVERSARY PROCEEDING**

The Colonial BancGroup, Inc. ("**BancGroup**"), Debtor in the above captioned bankruptcy case, herewith respectfully submits its brief in opposition to the Motion of Branch Banking and Trust Company ("**BB&T**") to withdraw the reference in Adversary Proceeding 11-03022 (District Court Misc. No. 2:11mc3579-MHT).  For convenience, the above-captioned Adversary Proceeding shall hereinafter be referred to as the **"Deposit Accounts Action**."

717607.4

## I.      INTRODUCTION.

The Deposit Accounts Action is one of two adversary proceedings which were filed by BancGroup in the Bankruptcy Court for this District ("**Bankruptcy Court**") against BB&T.  The reference in the other Adversary Proceeding (Adv. Proc. No. 11-03026, now District Court Case No., 2:11-cv-00824-MHT-WC) (the "**REIT Preferred Action**"), was withdrawn by the Court by consent of BancGroup.[1]  As in the case of the REIT Preferred Action, the Deposit Accounts Action has been pending before the Bankruptcy Court for over six months.

As discussed in detail below, the Deposit Accounts Action involves approximately $24 million in deposit accounts at BB&T which are property of BancGroup's bankruptcy estate and in which BB&T claims a security interest.  Prior to the filing of the Deposit Accounts Action, BB&T commenced a related contested matter before the Bankruptcy Court on December 13, 2010 seeking relief from the automatic stay as provided for in section 362 of the Bankruptcy Code to enable it to set-off the subject deposit accounts against sums purportedly owed by third parties to BB&T (the "**Deposit Account Contested Matter**").[2]  Prior thereto, importantly, BB&T also filed a proof of claim with

---

[1]      The REIT Preferred Action involves $300 million in preferred stock which is in the possession of BB&T and which BancGroup contends is either property of the Bankruptcy Estate or is property which has been preferentially or fraudulently transferred and may be recovered for the benefit of the Bankruptcy Estate under bankruptcy and state law.  Unlike in the Deposit Accounts Action, the Federal Deposit Insurance Corporation as Receiver for Colonial Bank is a party by virtue of a Third Party Complaint which BB&T filed prior to the withdrawal of reference.

[2]      The Deposit Account Contested Matter filed by BB&T was stayed pending the outcome of the Deposit Accounts Action by agreement of the parties.  *Doc. No. 1200 (Bankruptcy Court main file).*

the Bankruptcy Court on November 30, 2009 claiming both a security interest in the subject deposit accounts and an unsecured indebtedness owed by BancGroup. *Proof of Claim No., 163-1*. On July 27, 2010, BB&T amended its Proof of Claim changing the amounts owed, but still claiming both a secured and unsecured indebtedness. *Proof of Claim No., 163-2*.

For the reasons discussed and argued below, BancGroup respectfully opposes BB&T's Motion to Withdraw Reference and urges the Court to deny the relief BB&T requests.

## II.  BACKGROUND.

On August 14, 2009, Colonial Bank, the wholly owned subsidiary and primary asset of BancGroup, was closed and its assets were sold by the Federal Deposit Insurance Corporation as Receiver for Colonial Bank (the "**FDIC-Receiver**") to BB&T.  On August 25, 2009, BancGroup filed a Chapter 11 Case in the Bankruptcy Court.

Included in the assets of BancGroup when it filed for bankruptcy was $36,995,513.27 in deposit accounts, previously on deposit at Colonial Bank, but at the time of BancGroup's bankruptcy on deposit at BB&T.  These deposit accounts were part of Colonial Bank's assets which the FDIC-Receiver sold to BB&T following the bank's closing.[3]  Approximately $24 million of these Deposit Accounts form the basis for

---

[3]      As the Bankruptcy Court has already ruled, the matching deposit liabilities were assumed by BB&T pursuant to the same Purchase and Assumption Transaction. *See In re The Colonial BancGroup, Inc.*, Case No. 09-32303 (DHW), at 16 (Bankr. M.D. Ala. Jan. 24, 2011) ("a plethora of stipulated facts show that BB&T assumed liability for the debtor's deposits under the P&A Agreement").

717607.4

BancGroup's claim in the Deposit Accounts Action (the difference attributable to the fact that BB&T does not assert any interest in BancGroup's "Operating Account.").

On March 4, 2010, BancGroup filed an Objection in its Chapter 11 Case to the proof of claim filed by the FDIC-Receiver.  Doing so commenced a contested matter which is now before this Court after the Court granted the FDIC-Receiver's motion for withdrawal of the reference.  It is now styled, *In re The Colonial BancGroup, Inc.*, No. 2:10-cv-0409 (MHT) (the "**Claim Objection**").

On March 5, 2010, BancGroup instituted a civil action in this Court against the FDIC-Receiver, *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (the "**FIRREA Action**,") (together with the Claim Objection, the "**First-Filed Actions**"). BancGroup filed an amended complaint in the FIRREA Action on May 28, 2010, and the FDIC-Receiver filed its answer on June 25, 2010 and an amended answer on October 26, 2010.   In the amended complaint, BancGroup seeks a judicial determination of its disallowed claim against the receivership of Colonial Bank pursuant to 12 U.S.C. § 1821(d)(6).

BancGroup's Amended Complaint in the First-Filed Actions contains a section entitled, "Deposit Claims."   Essentially, BancGroup seeks damages from the FDIC-Receiver under this section of its Complaint for the lost use of the deposit accounts on the grounds, *inter alia*, that the FDIC-Receiver unlawfully denied BancGroup's access to, and use of the deposit accounts, notwithstanding that they had been assumed by BB&T.

717607.4

BancGroup also seeks damages for the FDIC-Receiver's violation of the Automatic Stay and asserted a "protective" claim "in the event the FDIC-Receiver purports to exercise any rights it may assert under the P&A Agreement."  Thus, the Deposit Claims at issue in the First-Filed Actions are distinct legally and factually from those asserted in the Deposit Accounts Action.

The FDIC-Receiver and BancGroup have now filed and fully-briefed cross Motions for Summary Judgment in the First-Filed Actions.  The FDIC-Receiver's motion concerns each of the claims asserted in the FIRREA Action, including ownership of approximately $253 million in tax refunds and ownership of 300,000 shares of preferred stock, par value $1,000, issued by CBG Florida REIT Corp., a former subsidiary of BancGroup and Colonial Bank (the "**RPS**").  BancGroup elected to move for summary judgment solely with respect to the tax refunds and the RPS, and its motion does not seek judgment on the deposit account claims.

On April 5, 2011, BancGroup instituted the above-captioned Deposit Accounts Action against BB&T in the Bankruptcy Court asserting claims for declaratory relief, avoidance of the security interest claimed by BB&T, equitable subordination and turnover of the proceeds of the Deposit Accounts.[4]  BB&T has filed an answer, a Scheduling Order has been entered in the adversary proceeding and the parties have

---

[4]      The statute of limitations for filing avoidance actions such as those included in the Deposit Accounts Action is two years after the entry of the order for relief.  *See* 11 U.S.C. § 546.  Accordingly, as estate-fiduciary, BancGroup had until August 24, 2011 within which to file its deposit account claims against BB&T or risk losing them.

717607.4

exchanged Rule 26(a)(1) initial disclosures.  On September 20, 2011 (nearly six months after commencement of this adversary proceeding), BB&T filed its Motion for Withdrawal of Reference.

## III.  ARGUMENT.

As an initial matter, the Deposit Accounts Action is a "core" proceeding under 28 U.S.C. §157 inasmuch as it asserts avoidance of certain transfers and involves the determination of whether BB&T's alleged security interest in the deposit accounts is valid and enforceable.[5]  Importantly, sixteen months prior to BancGroup's filing of the Deposit Accounts Action, BB&T filed a proof of claim with the Bankruptcy Court asserting both a secured and unsecured claim.  Moreover, by commencing the Deposit Account Contested Matter, BB&T asked the Bankruptcy Court to adjudicate the very same issues raised in the Deposit Accounts Action, asserting that the Bankruptcy Court "has jurisdiction over the [Deposit Account Contested Matter] pursuant to 28 U.S.C. § 1334.  The motion is a core proceeding pursuant to 28 U.S.C. § 157(b) and a contested matter under Bankruptcy Rule 9014."  *Doc. No. 1013 (Bankruptcy Court main file).* Under applicable authority, it therefore cannot be disputed that BB&T has consented to the jurisdiction of the Bankruptcy Court to determine the issues raised in the Deposit Accounts Action.  *See, e.g., Katchen v. Landy*, 382 U.S. 323, 86 S. Ct. 467 (1966),

---

[5]     *See* 28 U.S.C. § 157(b)(2)(f), (h) and (k) (providing that the following procedures are "core proceedings": "proceedings to determine, avoid, or recover preferences"; "proceedings to determine, avoid, or recover fraudulent conveyances"; and "determinations of the validity, extent, or priority of liens").

717607.4

*Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S. Ct. 2858 (1982); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782 (1989); and *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

Notwithstanding the undisputed jurisdiction of the Bankruptcy Court to hear and rule upon the issues in the Deposit Accounts Action, and the fact that BB&T previously sought a ruling from the Bankruptcy Court on these issues, BB&T makes three arguments in favor of withdrawal of the reference.  First, BB&T argues that under the withdrawal statute, 28 U.S.C. §157(d), withdrawal is mandatory inasmuch as the Court will be required to give "substantial and material consideration" of the FIRREA statute.  Secondly, BB&T contends that if withdrawal is not mandatory, permissive withdrawal of the reference is required because "it will avoid duplication and waste, as well as the risk of inconsistent adjudications, by allowing the District Court to resolve the overlapping claims and issues presented in the District Court Actions and the Adversary Proceedings." *BB&T Memorandum of Law*, Doc. No. 20 filed in the Adversary Proceeding in the Bankruptcy Court at p. 8.  Finally, BB&T argues that its Motion is timely.

BancGroup will hereinbelow address each of these contentions.  Because Courts have uniformly held that the timeliness of a motion for withdrawal of reference – whether mandatory or permissive – is the threshold question in evaluating such a motion, BancGroup will address the timeliness issue first before addressing BB&T's other issues.

717607.4

*See In re Mahlmann,* 149 B.R. 866, 869 (N.D. Ill. 1993) (Plaintiff's Motion sought mandatory withdrawal: "The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether [the] motion…was made in a timely manner….If the motion is not made in a timely manner, the parties' rights under § 157(d) are deemed waived."); *In re the Securities Group 1980*, 89 B.R. 192 (M.D. Fla. 1988) (Party sought mandatory withdrawal of reference which was denied because Motion was not timely filed.)

### A.   BB&T's Motion is Untimely and Should be Denied.

Irrespective of "mandatory" or "permissive" grounds, the motion must be "timely."   *See* 28 U.S.C. § 157(d).   In an extremely instructive case, *In re Childs*, 342 B.R. 823 (M.D. Ala. 2006), which is cited by BB&T but not discussed, Judge Albritton of this Court comments on, among other things, timeliness:

> Before any inquiry can be made concerning "cause" the court must first deal with the threshold issue of timeliness. "The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics." [Citations Omitted.] Unfortunately § 157(d) does not provide a bright line rule on what is timely. This is likely out of necessity, as what may be timely for one movant will not be timely for another. Courts have differed, but only slightly, on how to define "timeliness" in the withdrawal context. *Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007 n. 3 (9th Cir.1997) (motion to withdraw is timely "if it was made as promptly as possible in light of the developments in the bankruptcy proceeding"); *In re Sevko, Inc.*, 143 B.R. 114, 116 (N.D.Ill.1992) (motion to withdraw reference is either as soon as possible, or at the first reasonable opportunity after the moving party has notice of the grounds for withdrawal, depending on the facts of

each case); *Burger King Corp. v. B–K of Kan., Inc.*, 64 B.R. 728, 730–31 (D.Kan.1986) (holding that a ten-month delay in filing a motion to withdraw reference was "timely," albeit at "the outer limit"); *Laine v. Gross*, 128 B.R. 588, 589 (D.Me.1991) (a motion to withdraw the reference that was filed six months after the time from which "it was clear that grounds for withdrawal existed" was not timely filed). "Despite the absence of a statutory definition, courts are in general agreement that a motion is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding, or, more simply, if it was made at the first reasonable opportunity." *United States v. Kaplan*, 146 B.R. 500, 503 (D.Mass.1992).

*Childs*, 342 B.R. at 827-28.

BB&T's motion, filed twenty-two months after BB&T filed its proof of claim consenting to the jurisdiction of the Bankruptcy Court, one and one half years after BancGroup filed its complaint in the FIRREA Action, nine months after it commenced the Deposit Account Contested Matter, five months after BancGroup instituted the Deposit Accounts Action and three months after BB&T filed its answer is simply untimely, given any reading of the cases on this subject.  Thus, even if BB&T somehow satisfied the standard for mandatory or permissive withdrawal (which it does not), its motion should still be denied as untimely.

The First Filed Actions have been pending for over one and one-half years, and although BB&T is not a party to these cases, it has participated meaningfully in the discovery phase of the cases since several of its employees who were former employees of Colonial Bank were deposed by BancGroup and the FDIC-Receiver.  Thus, BB&T could have filed its Motion as soon as BancGroup filed the Deposit Accounts Action.

Page 9 of 23

Instead it did not, deciding instead to go through the Rule 26 scheduling procedures and initial disclosures and then to file an answer before the Bankruptcy Court.

BB&T argues that its Motion is timely because during April and May 2011, the "parties" were litigating confirmation of BancGroup's plan which was confirmed on June 2, 2011. BB&T further argues that if the plan were not confirmed, it might have "impacted" the Deposit Accounts Action. These arguments are simply disingenuous. Had BancGroup's plan not been confirmed, a Trustee would likely have been appointed and the case converted to Chapter 7. It is difficult to imagine that a Trustee (or any other cognizable fiduciary) would have elected to withdraw its claims against BB&T on a $24 million claim. Prosecution of BancGroup's plan was never grounds to expect the Deposit Accounts Action to be resolved.[6]

Finally, BB&T contends that it also had to wait until it could demand indemnification from the FDIC-Receiver in the REIT Preferred Action (but notably not in the Deposit Accounts Action) and receive a response from the FDIC-Receiver. This argument is now irrelevant as it does not concern the Deposit Accounts Action.

---

[6]     BB&T also references the settlement conference between BancGroup and the FDIC-Receiver as an excuse for the motion's lack of timeliness. However, that settlement conference does not save BB&T. As a threshold matter, BancGroup never "invited" BB&T as BB&T asserts. The FDIC-Receiver did and BancGroup did not object. But even if BB&T were accurately portraying the facts, whatever invitation BB&T received came just prior to the conference which took place in late August 2011. This case is not one in which BB&T was actively engaged in mediation with BancGroup such that BB&T had a justifiable reason to await filing its motion. Rather, BB&T allowed the Deposit Accounts Action to go forward with the Bankruptcy Court for months and only now seeks to reverse course, but its attempt is not timely.

717607.4

In sum, BB&T's arguments simply do not support its claim of timeliness.  In fact, all of its arguments support a finding that BB&T has been dilatory in filing its Motion for Withdrawal, choosing instead to appear before and seek resolution of these matters from the Bankruptcy Court.  As stated by the Court in *In re Sevko*, *supra*, a litigant must file its motion to withdraw reference either as soon as possible, or at the first reasonable opportunity after receiving notice of the grounds for withdrawal.  Here, each of the purported grounds on which BB&T relies have remained constant since the filing of the complaint commencing the Deposit Accounts Action.

### B.  Withdrawal of the Reference is <u>not</u> mandatory.

11 U.S.C. §157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

BB&T contends that any Court deciding the issues in the Deposit Accounts Action will necessarily be required to engage in "substantial and material consideration" of the Federal Deposit Insurance Act and the FIRREA statute, 12 U.S.C. § 1821(d) (FIRREA's administrative claims process), §1821(j) (prohibiting actions to restrain or affect the exercise of powers or functions by the FDIC) and § 1828(u) (bank holding company precluded from bringing a claim against a federal banking agency to recover a transfer of

717607.4

assets to its subsidiary bank at a time it was subject to direction by a federal banking agency to increase the bank's capital).   Thus, BB&T argues that withdrawal of the reference is mandatory.

Courts including a District Court in this District have held that mandatory withdrawal of reference is required only where there is a "substantial and material consideration" of the other federal laws.   In *In re Childs*, 342 B.R. 823, 826 (M.D. Ala. 2006), discussed, *supra*, in conjunction with the timeliness issue, Judge Albritton of this Court comments on the parameters and reasons for the "substantial and material" prerequisite for mandatory withdrawal of reference:

> The majority of courts have concluded "that withdrawal is mandatory 'only if the court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-Code statutes' which have more than a de minimis impact on interstate commerce." *In re TPI Intern. Airways*, 222 B.R. 663, 667 (S.D.Ga.1998) (quoting *In re C–TC 9th Ave. Partnership*, 177 B.R. 760, 762–64 (N.D.N.Y.1995)).   Courts that use the "substantial and material" test believe that any other approach would allow § 157(d) to become an "escape hatch" for persons who do not wish to have their claims in bankruptcy court. *Id*.; *In re American Body Armor & Equipment Inc.*, 155 B.R. at 591. They merely would have to allege a claim involving non-bankruptcy federal law. *In re C–TC 9th Ave. Partnership*, 177 B.R. at 763; *In re American Body Armor & Equipment, Inc.*, 155 B.R. 588, 590 (M.D.Fla.1993). Proponents also argue that such an escape hatch is inconsistent with Congressional intent. *In re Am. Body Armor & Equip.*, 155 B.R. at 591; *United States v. ILCO, Inc.*, 48 B.R. 1016, 1021 (N.D.Ala.1985).

717607.4

*Id.* at 826-827; *see also Abrahams v. Phil-Con Services, LLC*  2010 WL 4875581, *2 (S.D. Ala. Nov. 23, 2010) ("courts have uniformly agreed that a narrow interpretation [§ 157(d)] is indeed required").

Thus, mere presence of non-bankruptcy issues is not sufficient given that withdrawal is mandatory only if those issues "dominate the bankruptcy issues," and withdrawal is not required where the non-bankruptcy law "will only be tangential to the main issues in the bankruptcy case." *See, e.g., In re Sahni*, 227 B.R. 748, 751 (D. Kan. 1998) (concluding that application of Title 12's fraudulent conveyance provision does not require withdrawal).  "[B]are assertions that various non-bankruptcy statutes … will require substantial and material consideration" are not sufficient to justify withdrawal of the reference.  *BankUnited Financial Corp. v. FDIC*, 436 B.R. 216, 220 (S.D. Fla. 2010). More is required; mandatory withdrawal of the reference is appropriate only "when complicated interpretive issues, **_often of first impression_**, have been raised under non-Title 11 federal laws, or when there is a conflict between the bankruptcy and other federal law."  *Id.* (*citing TPI Int'l Airways, Inc. v. FAA (In re TPI Int'l Airways, Inc.)*, 222 B.R. 663, 667 (S.D.Ga. 1998) (emphasis added)).

The major claim in the Deposit Accounts Action, as aforesaid, is a straight forward action to recover preferential or fraudulent transfers – actions that fall squarely within the Bankruptcy Court's expertise.  It is based on BancGroup's contentions that (i) BancGroup had no obligation to secure third party liabilities owed to Colonial Bank; that

it received no consideration for doing so; and that therefore the granting of the security interest is avoidable as a fraudulent transfer under federal and state law; or alternatively, (ii) if it did have such an obligation, the securing of the obligation was preferential and also avoidable under the Bankruptcy Code.

First, to the extent BancGroup understands BB&T's argument, BB&T contends that under § 1821(d), BancGroup's claims are barred because it did not file a proof of claim against BB&T in the receivership for Colonial Bank. BB&T contends that an "analysis of FIRREA's jurisdictional bar will be required" and that only this Court, and not the Bankruptcy Court, is able to conduct that analysis pursuant to § 1821(d). However, BB&T misreads the statute. Nothing in § 1821(d) limits which courts can make the determination of whether § 1821(d) applies in the first instance. Unsurprisingly, courts have rejected this argument as a basis for withdrawal of the reference, finding that bankruptcy courts are more than qualified to determine any applicability of FIRREA's administrative claims procedure and jurisdictional bar. *See, e.g., Best Prods. Co*., 1994 U.S. Dist. LEXIS 5088, *6 (rejecting RTC's argument in support of motion to withdraw the reference that the court must consider § 1821(d)(13)(D) in resolving the Debtors claims); *In re CIS Corp*., 140 B.R. 351, 353 (S.D.N.Y. 1992) (same; noting "[i]t is familiar law that a court always has jurisdiction to determine its own jurisdiction").[7] Moreover, the Eleventh Circuit has instructed that,

---

[7]     BB&T's suggestion that BancGroup was required to file a proof of claim in Colonial Bank's receivership to recover its deposits which were assumed by BB&T is absurd and, taken to its extreme, would allow BB&T to

even were FIRREA applicable, the action itself could be heard by the Bankruptcy Court. *See Emerald Int'l Invs., Inc. v. Fed. Deposit Ins. Corp. (In re Emerald Int'l Invs., Inc.)*, 190 B.R. 701, 704 (Bankr. S.D.Fla. 1995) ("[T]he Eleventh Circuit remanded the § 1821(d)(6)(A) proceedings to be heard by the Bankruptcy Court.   Accordingly, the Bankruptcy Court has been directed to determine a matter traditionally heard by the District Courts.").

Second, BB&T contends that pursuant to § 1821(j), BancGroup improperly seeks to rescind an asset transfer made by the FDIC-Receiver and that therefore this statute protects BB&T from the avoidance claims BancGroup has made in the Deposit Accounts Action.   Contrary to BB&T's assertions, there are no substantial and material issues for a court to determine under § 1821(j) inasmuch as BancGroup does not seek to rescind any part of BB&T's Purchase and Assumption Agreement (the "**P&A**") with the FDIC-Receiver.[8]   Rather, BancGroup seeks to avoid the security interest which Colonial Bank purportedly held in the deposit accounts and which BB&T now purportedly holds as successor in interest.   Each of the cases cited by BB&T concern parties seeking to enjoin or rescind asset sales or other transactions of the FDIC-Receiver.   BancGroup's claim to avoid the security interest under chapter 5 of the Bankruptcy Code existed vis-à-vis Colonial Bank prior to the P&A just as it does now exist against BB&T following the

---

deny payment to the many individuals who had funds on deposit with Colonial Bank (which liabilities were assumed by BB&T) who did not file proofs of claim with the FDIC-Receiver.

[8]         The Deposit Accounts were not an asset of Colonial Bank, but were instead a liability.

P&A.  As discussed *infra,* proof of the avoidability of the security interest in the Deposit Accounts Action will only involve evidence surrounding the original grant of the security interest to Colonial Bank and nothing at all respecting any actions taken by the FDIC-Receiver in conjunction with the closing of Colonial Bank and the sale of its assets.  None of BB&T's cases stand for the proposition that a P&A-type transaction **improves** the position of the purchasing bank.  In any event, even if BB&T is correct that the four Circuit-level and two District Court cases it cites preclude BancGroup's claims (and they do not), then all the Bankruptcy Court will be required to do is to apply the teachings of those cases.  *See Green v. FDIC (In re Tamalpais Bancorp.)*, 451 B.R. 6, 10, 2011 U.S. Dist. LEXIS 34118, *6 (N.D. Cal. Mar. 21, 2011) (holding that FDIC-Receiver's §1821 (j) defense did not justify withdrawal of reference because bankruptcy court could simply "mechanically" apply cases cited by FDIC).

Third, BB&T contends that § 1828(u) likewise protects it from BancGroup's claims in the Deposit Accounts Action.  However,, the statute on its face bars claims against "a Federal banking agency", 12 U.S.C. § 1828(u), not against purchasing and assuming banks like BB&T.  The lone case cited by BB&T in support of its assertion does not at all concern § 1828(u).  In any event, the Bankruptcy Court is more than able to apply this statute, if applicable.  The "mere presence of FIRREA-based defenses" is insufficient to warrant withdrawal of the reference.  *Tamalpais Bancorp.*, 451 B.R. at 9.

717607.4

BB&T's second argument under § 1828 – found in a footnote on page 13 of BB&T's Memorandum – is that since §1828 precludes an avoidance of an asset transfer made by the FDIC-Receiver, BancGroup will not be able to demonstrate that it can avoid the initial transfer of the asset to Colonial Bank which BB&T argues is a prerequisite to avoidance of a transfer received by a subsequent transferee.  BB&T cites *IBT Int'l, Inc. v. Northern*, 408 F.3rd 689, 706 (11th Cir. 2005) for this proposition.

*IBT Int'l* holds that it is not necessary for BancGroup to avoid the initial transfer prior to proceeding against a subsequent transferee ("In short, once the plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line." (*IBT In'tl* at p. 706).  The Eleventh Circuit goes on to state, "[t]herefore, we hold that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee." *IBT Int'l* at p. 708.  While it is true that BancGroup would have to prove that the subject transactions were avoidable, it does not follow that this in any way involves proof that the transfer from the FDIC-Receiver to BB&T is or is not avoidable. It simply requires proof that the transfer from BancGroup to Colonial Bank, the initial transferee was avoidable.  Importantly, BancGroup neither seeks nor is required to seek avoidance of the transfer from Colonial Bank to the FDIC-Receiver.[9]

---

[9]      Additionally, BB&T argues that substantial and material consideration of 12 U.S.C. § 1819 "**may** be required" in connection with BB&T's third party complaint against the FDIC-Receiver.  This argument is now moot because it only pertained to the REIT Preferred Action for which BancGroup has consented to the withdrawal of the reference.  It is worth noting, however, that the statute concerns removal from **state** court and thus never had any

In sum, BB&T's arguments under 12 U.S.C. §§ 1821 and 1828 either are baseless or are so tangential to the main issues of preferential and fraudulent transfers that they do not rise to the level of substantial and material and do not dominate the bankruptcy issues.

### B.  Permissive Withdrawal of the Reference is <u>not</u> warranted.

BB&T contends that in any event the Court should withdraw reference for "cause shown."  BB&T states that the "cause" is the pendency of the FIRREA case before this Court and that BB&T would be potentially prejudiced "by splitting its claims between this Court and the Bankruptcy Court."  *BB&T Memorandum* at p. 14.

When determining if there is sufficient cause for the withdrawal, district courts consider: (1) the advancement of uniformity in bankruptcy administration; (2) decreasing forum shopping and confusion; (3) promoting the economical use of the parties' resources; and (4) facilitating the bankruptcy process.  *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir. 2000).  *See also In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991) ("[Debtor] has a right to the continued benefit of bankruptcy jurisdiction absent a showing of cause for withdrawal.").

Before assessing these factors, however, the Court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn".  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993),

---

relevance to either action.  The Bankruptcy Court, unlike state courts, is an adjunct of this Court.  *See BankUnited Financial Corp. v. FDIC*, 436 B.R. at 221 ("Absent express contrary indication, a statutory grant of jurisdiction to a district court does not divest the bankruptcy court of coextensive referral jurisdiction").

717607.4

cert. dismissed, 511 U.S. 1026, 114 S.Ct. 1418.  *See also In re Davis*, Bankr. No. 06-11746, Adversary No. 06-287, 2006 WL 3392167, at *2 (E.D.Pa. Nov. 20, 2006) ("in determining whether cause is shown, courts generally begin by considering the threshold question of whether the matters to be withdrawn are 'core' or 'non-core' to the bankruptcy case"); *In re Westmoreland Coal Co.*, 221 B.R. 512, 514-5 (D. Colo. 1998) ("the principle inquiry is whether the claim involves core or noncore bankruptcy proceeding"). *See, also*, *In re Hvide Marine Towing, Inc.*, 248 B.R. 841, 844 (M.D.Fla.2000); *In re TPI Int'l Airways*, 222 B.R. 663, 668 (S.D.Ga.1998).   Thus, where the matters are core proceedings, many of the *Simmons* factors will weigh in favor of the Bankruptcy Court resolving the case.

There is no question that the Deposit Accounts Action is a core proceeding.  It seeks avoidance of preferences and fraudulent transfers; it essentially is a counterclaim to BB&T's proofs of claim; and it is a matter related to the liquidation of BancGroup's estate.  *See* 11 U.S.C. §157(b)(2)(C), (F), (H) and (O).  Indeed, BB&T previously conceded this in connection with commencing the Deposit Account Contested Matter.

Moreover, the claims made against the FDIC-Receiver in the First Filed Actions, which are before this Court, the pendency of which is the prime basis for BB&T's withdrawal motion, are underline significantly different from the claims made by BancGroup against BB&T.  In the former, BancGroup seeks damages from the FDIC-Receiver for the lost use of the deposit accounts on the grounds, *inter alia*, that the FDIC-Receiver

unlawfully denied access to and use of the deposits and for damages related to violation of the Automatic Stay.  In the Deposit Accounts Action, BancGroup seeks avoidance of a security interest from BB&T, the holder of the subject accounts so that those accounts may be paid to BancGroup.  Because of these fundamental differences, it is difficult to see how a decision by this Court in the First Filed Actions or a decision by the Bankruptcy Court on the Deposit Accounts Action would implicate the other as suggested by BB&T.[10]

Moreover, the Bankruptcy Court – which has presided over BancGroup's Chapter 11 Case since its inception and which has particular expertise concerning preferential and fraudulent transfer law – has already substantially considered the deposit accounts in rejecting the FDIC-Receiver's attempts to rescind BB&T's assumption of the deposits so that the FDIC-Receiver could set off against the deposits.  Thus, it makes practical sense for the Bankruptcy Court to handle core adversary proceedings such as the one at bar inasmuch as the Bankruptcy Judge of that court is intimately familiar with the procedural and factual history of BancGroup's case and has, and will deal with the Deposit Accounts Action expeditiously to the benefit of BancGroup's estate and its creditors who are depending on the resolution of pending adversary cases in the Bankruptcy Court in order to receive distributions under BancGroup's Plan.  *See, e.g., In re Enron Corp.*, 295 B.R.

---

[10]     For example, it would not be inconsistent if the District Court denied the relief prayed for BancGroup in the First Filed Actions regarding the deposit accounts, but the Bankruptcy Court ordered the transfers avoided in the Deposit Accounts Action.  BancGroup understands that part of the explanation is that much of the argument in BB&T's motion concerned the REIT Preferred Action.

21, 26 (S.D.N.Y. 2003) (finding it inefficient to withdraw core proceedings from Bankruptcy Court given Bankruptcy Court's involvement in chapter 11 proceedings for months, its familiarity with procedural history and facts surrounding the debtors' collapse, and its experience adjudicating core proceedings concerning fraudulent transfer and avoidance).[11]

Finally, although there are summary judgment motions pending before the Court, as discussed above, the First-Filed Actions include claims distinct from those asserted in the Deposit Accounts Action.  At bottom, the Bankruptcy Court is the most efficient and appropriate forum in which to resolve the Deposit Accounts Action.

## IV.  CONCLUSION.

For the reasons discussed above, BancGroup respectfully requests that the Court deny BB&T's Motion for Withdrawal of Reference.

**[Signatures on next page]**

---

[11]     Even if it did not make sense in terms of judicial economy and efficiency to allow the Bankruptcy Court to adjudicate the Deposit Accounts Action, BB&T's reliance upon "efficient use of judicial resources" is also insufficient to support withdrawal of the reference.  *See, e.g., In re Westmoreland Coal Co.*, 221 B.R. at 515 (holding that the fostering efficiency does not, by itself, constitute "cause" for permissive withdrawal of reference); *see also Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 896-97 (D. Del. 1991) (concluding that "defendants' judicial economy arguments are insufficient to rebut the *DeLorean* presumption (i.e., Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy) since judicial economy could be achieved in either forum").

717607.4

Respectfully submitted, this 20th day of October, 2011.

By: _____/s/ Brent W. Herrin_____
      Brent W. Herrin (HER044)
      Alabama Bar No: ASB-1622-T65H
      bherrin@cpmas.com
      Gus H. Small
      Georgia Bar No. 653200
      gsmall@cpmas.com

      **COHEN POLLOCK MERLIN & SMALL**
      A Professional Corporation
      Counsel to The Colonial BancGroup, Inc.
      Suite 1600
      3350 Riverwood Parkway
      Atlanta, Georgia 30339
      Telephone: (770) 858-1288
      Facsimile: (770) 858-1277

      and

      Benjamin I. Finestone
      benjaminfinestone@quinnemanuel.com

      **QUINN EMANUEL**
      **URQUHART & SULLIVAN, LLP**
      Counsel to Debtor
      51 Madison Avenue
      New York, New York 10010
      Telephone: (212) 849-7000
      Facsimile: (212) 849-7100

717607.4

## CERTIFICE OF SERVICE

I hereby certify that on October 20, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Philip Henry Butler. Esq. (pbutler@babc.com, scarmichael@babc.com, cmstewart@babc.com)

Nicholas Christian Glenos, Esq. (cglenos@babc.com)

Thomas Parker Griffin, Jr., Esq. (pgriffin@babc.com, swillis@babc.com)

Ethan Tyler Tidmore, Esq. (etidmore@babc.com, cleuschner@babc.com)

This 20th day of October, 2011.

**COHEN POLLOCK MERLIN & SMALL**
A Professional Corporation
Counsel to The Colonial BancGroup, Inc.

By: ____/s/ Brent W. Herrin____
        Brent W. Herrin (HER044)
        Alabama Bar No: ASB-1622-T65H
        bherrin@cpmas.com

        3350 Riverwood Parkway
        Suite 1600
        Atlanta, Georgia 30339
        Telephone:  (770) 858-1288
        Facsimile:  (770) 858-1277

717607.4